UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CALDON TOWNES,

       Plaintiff,         Case No. 09-10693

v.                 Honorable Julian Abele Cook, Jr.

COUNTY OF WAYNE, WARREN C. EVANS,
SHERIFF and CHIEF JERIAL HEARD and DEPUTY
SHERIFF ALI MAZLOUM, Individually, and in their
official capacities,

       Defendants

## ORDER

    This case involves an accusation by the Plaintiff, Caldon Townes, who, through his
amended complaint, has charged the Defendants[1] with a variety of wrongful acts (namely, false
imprisonment, wilful and wanton misconduct and/or deliberate indifference and gross negligence,
an intentional infliction of emotional distress, and the deprivation of his constitutional rights under
the Fourth, Eighth and Fourteenth Amendments to the United States Constitution, all in violation
of 42 U.S.C. § 1983).

    Currently pending before the Court is the Defendants' motion to dismiss the complaint
under Fed. R. Civ. P. 12(b)(6) and 12(c) and for the entry of a summary judgment pursuant to Fed.
R. Civ. P. 56 (c). For the reasons that have been stated below, the Defendants' motion will be
denied in part and granted in part.

---

[1]All of the individual Defendants in this action are, or were, law enforcement officials of
the Wayne County, Michigan government; namely, Sheriff Warren C. Evans, Chief Sheriff Jerial
Heard, and Deputy Sheriff Ali Mazloum. The remaining Defendant, County of Wayne, is a
municipal entity within the State of Michigan government.

I.

On October 27, 2006, Wayne County (Michigan) Circuit Court Judge David Groner sentenced Townes to serve two years of probation following his plea of "no contest" one month earlier to a state charge of felony stalking, subject to the following conditions: he must not (1) have any contact with the complainant, Evelyn Stoakley; and (2) engage in assaultive behavior. On May 14, 2008, Probation Agent Dujuana Roberts of the Michigan Department of Corrections filed a report with Judge Groner, in which she alleged that Townes had "been involved in the same kind of activity that placed him on probation." More specifically, it was Agent Roberts' contention that Townes had been accused by another woman, Tammie King, of leaving threatening and derogatory voice mail and text messages on her cellular phone. Acting upon Agent Roberts' request, Judge Groner issued an arrest warrant against Townes on June 11, 2008 for violating his probation. Accompanying the arrest warrant was a "General Mittimus" of the same date which authorized Townes to be transported to and detained at the Wayne County Jail.

One week later (June 18, 2008), an officer with the Roseville Michigan Police Department stopped Townes for driving with an expired license plate tag. Upon discovering the outstanding warrant, Townes was arrested and held in custody until approximately 1:30 p.m. on June 20, 2008 when he was transferred to the Wayne County Jail on the same day at 4:00 p.m. Townes was not arraigned until July 7, 2008 - seventeen (17) days after being taken into custody. When Townes was finally arraigned on July 12, 2008, he was released on a bond that was set at $2,500 or 10%. The judge, who ultimately presided over the probation violation hearing, concluded that no violation had occurred and, as a result, dismissed the charges against Townes on November 10, 2008.

2

II.

Central to a resolution of this dispute between the parties is a review of the events that transpired while Townes was in custody. The parties agree that the Defendants sought to have him arraigned for the first time on June 23, 2008 - five days after his initial arrest. According to the Defendants, the place where Townes should have been arraigned (to wit, the Frank Murphy Hall of Justice) was closed when he was first brought to the courthouse. Hence, it is their contention that inasmuch as this courthouse was closed for business on the weekend of his arrest, the first opportunity for them to have Townes arraigned was on June 23rd. However, the saga involving Townes continued. When the law enforcement officers took Townes to Judge Groner's courtroom on June 23rd, they were informed that the case had been transferred to Judge Michael J. Callahan. It is the Defendants' contention that they, acting upon the directions of the court's staff, returned Townes to the Wayne County Jail along with instructions to appear before Judge Callahan on the following day (June 24th).

As directed, Townes was taken to Judge Callahan's courtroom on June 24th, only to be told that the judge would be out of the office from June 23rd through July 7th. As a result, he was returned to the Wayne County Jail without appearing before a judicial officer for an arraignment. The record in this cause also reveals that the Defendants did not make any effort to have Townes arraigned on the following day – June 25th or the 26th, 27th, 28th, 29th, or 30th. On July 1st, the Defendants removed Townes from his jail cell and brought him back to Judge Groner's courtroom despite having been told that his case would be handled by Judge Callahan. Shortly thereafter, the Defendants returned him to the Wayne County jail, repeated the same failed procedure, and, once again, failed to make Townes available for an arraignment on July 2nd. History repeated itself, in

3

that no attempt was ever made to arraign Townes on July 3rd, July 4th, July 5th or July 6th . On July 7th, he was finally arraigned.

The Defendants point out that on three of the seventeen days that Townes was in custody, he was receiving medical treatment which made him unavailable for an arraignment. Townes, while agreeing that his kidney disease required him to be transported from the Wayne County Jail to the Detroit Receiving Hospital between June 26th and June 29th, asserts that the Defendants could have utilized legally acceptable alternative methods of processing his arraignment (e.g., video, closed circuit television, teleconference methods, or in person at the hospital).

Townes contends that he frequently complained orally and in writing to the law enforcement officers, nurses, doctors, and psychologists about not being arraigned - all to no avail. Pointing to the Defendants' failure or refusal to process him in a constitutional manner, he claims to have suffered in a variety of ways; i.e., a worsening of his kidney disease, the development of mental health problems which are allegedly attributable to his incarceration at the Wayne County Jail, the loss of two job opportunities and the use of his car.

II.

The Defendants urge the Court to dismiss the lawsuit, issue a judgment on the pleadings or authorize the entry of a summary judgment on the basis of Fed. R. Civ. P. 12(b)(6), 12(c) and 56(c). A motion for judgment on the pleadings under Rule 12(c) is to be analyzed under the same standard as a motion to dismiss under Rule 12(b)(6). *See, e.g., Sensations, Inc. v. City of Grand Rapids*, 526 F.3d. 291, 295-96 (6th Cir.2008). Rule 12(b)(6) allows the court to assess whether the plaintiff has stated a claim upon which relief may be granted. Thus, a court must construe the complaint in favor of the plaintiff, accept his allegations of the complaint as being correct, and

4

determine whether these factual allegations have presented a plausible claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 2007). In order to survive a motion to dismiss under Rule 12(b)(6), the plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir.2007) (quoting *Twombly,* 550 U.S. at 555) (citations and quotations omitted). Although the complaint need not contain a "detailed" account of the claimed wrong, the "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Twombly* at 555.

Inasmuch as the Defendants have made reference in their pleadings to certain matters that are outside of the record of their request for relief, the Court will treat this motion as an application for the entry of a summary judgment under Rule 56(c). *See generally,* Fed. R. Civ. P. 12(d). In 1986, the Supreme Court opined that "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupportable claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Under Federal Rule of Civil Procedure 56(c), a motion for a summary judgment should be granted if a party "show[s] that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Here, the burden is on the movants to demonstrate the absence of a genuine issue of a material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In assessing a summary judgment motion, the Court is obliged to examine any pleadings, depositions, answers to interrogatories, admissions, and affidavits in a light that is most favorable to the nonmoving party. Fed. R. Civ. P. 56(c); *Boyd v. Ford Motor Co.,* 948 F.2d 283, 285 (6th Cir. 1991). It is the responsibility of the Court to determine "whether . . . there are any genuine factual issues that properly can be resolved only by a finder of

5

fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Hence, a summary judgment must be entered only if (1) the evidence clearly suggests that the contested matter is "so one-sided that [the proponent] must prevail as a matter of law," *id.* at 252, or (2) the opponent fails to present evidence which is "sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. Importantly, the presentation of a mere scintilla of supporting evidence is grossly insufficient. *See Anderson*, 477 U.S. at 252, *quoted in Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).

## A.

The Defendants first argue that inasmuch as Wayne County is a governmental entity that was engaged in the exercise of a governmental function, i.e. maintaining and operating the jails, Mich. Comp. Laws. § 691.1407(1) renders Wayne County immune from Townes' claims of tort liability for false imprisonment, gross negligence, and intentional infliction of emotional distress. This legislative enactment provides, in part, that "[e]xcept as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." A "governmental agency" is defined as a state or a political subdivision. According to Mich. Comp. Laws. § 691.1401(a)(d), a "political subdivision" includes a county. Thus, if Wayne County was engaged in the exercise or the discharge of a governmental function during the times that have been outlined above, it is immune from tort liability unless a statutory exception applies. Michigan courts have held that although those governmental agencies have broad immunity, the exceptions are narrowly construed. *State*

6

*Farm Fire & Cas. Co. v. Corby Energy Services, Inc.*, 271 Mich. App. 480, 491 (2006).

The Defendants correctly note that the courts in Michigan have consistently recognized that the operation of a jail is a uniquely governmental function. *See generally, Roberts v. City of Troy,* 170 Mich. App. 567, 575 (1988) ("The operation of a jail or detention facility is a governmental function, for which a city is generally immune."); *Wojtasinski v. Saginaw*, 74 Mich. App. 476, 477 (1977) ("Generally, the operation and maintenance of a jail is a governmental function"). Therefore, in the absence of an exception, no liability can attach to a county on a state law tort claim that may have arisen from the production of such services.

Townes challenges this conclusion by arguing that Wayne County is not entitled to governmental immunity because (1) the Defendants performed their purported governmental functions tortiously, and (2)  material questions of fact remain, all of which preclude the entry of a summary judgment.  As to the first claim, Townes argues that the law in Michigan (to wit, Mich. Comp. Laws. §691.1407(1)) does not entitle governmental entities to absolute immunity.  In fact, he submits that such entities may be exposed to liability for certain tortious conduct.  Furthermore, he posits that the Defendants were acting outside of the scope of their authority when they subjected him to "an unjustifiably lengthy detention and unreasonable delay" in securing his arraignment.  In effect, Townes' claim appears to be that the Defendants were grossly negligent in their detention of him without an arraignment.

Notwithstanding this contention, Michigan law does not recognize an intentional tort exception to governmental immunity that specifically applies to government agencies.  *Harrison v. Director of Department of Corrections*, 194 Mich. App. 446,  450 (1992).  To the contrary, the exceptions to governmental immunity in § 691.1407 extend solely to its officers and employees -

7

but not to the government agency. *See Gracey v. Wayne County Clerk,* 213 Mich. App. 412, 420 (1995), abrogated on other grounds by *American Transmissions, Inc. v. Attorney General,* 454 Mich. 135 (1997). Because the Court is not persuaded that a statutory exception applies to Wayne County under the circumstances in this case, the first three counts of Townes' complaint against this particular Defendant must be dismissed.[2]

B.

The Defendants next argue that they are entitled to a judgment on the pleadings as it relates to Townes' false imprisonment claims. They reason that their act in arresting him was manifestly legal. The Michigan Court of Appeals has characterized the tort of false imprisonment as an unlawful restraint on a person's liberty or freedom of movement. *Peterson Novelties, Inc. v. City of Berkley*, 259 Mich. App. 1, 17-18 (2003). A false arrest is one that is illegal or unjustified, and the arrested individual's guilt or innocence of the charge is deemed to be irrelevant to the analysis. *Id* at 18.

In order to prevail on a claim for an unlawful arrest under Michigan law, an aggrieved person must prove that his apprehension was not based on probable cause. *Id.* Thus, the arrest must be false in that it was made without legal authority; namely, "[o]ne who instigates or participates in a lawful arrest, as for example an arrest made under a properly issued warrant by an officer charged with the duty of enforcing it, may become liable for malicious prosecution, . . . or for abuse of process, . . . but he is not liable for false imprisonment . . . ." *Id.* (citing *Lewis v. Farmer Jack Div., Inc.,* 415 Mich. 212, 218 (1982).

---

[2]In light of this resolution, the Court will not address the merits of the argument by Wayne County that only an individual - not a corporate entity - can be liable for gross negligence, or wilful and deliberate indifference.

8

The Defendants contend that there is no dispute that Townes was taken into custody on the basis of a valid arrest warrant that had been issued under his name and supported by probable cause. They also note that Townes was confined to the Wayne County Jail pursuant to a valid court order in the form of a General Mittimus. Although Townes has conceded the validity of the arrest warrant in his amended complaint, he now claims that subsequent discovery has revealed "that [the warrant was] issued without reasonable or probable cause and was invalid." Moreover, Townes submits that the original order upon which he was detained (i.e., the General Mittimus) was stale inasmuch as it had only granted minimal authority to the Defendants to bring him before the issuing court.

To support his argument, Townes cites *Armstrong v. Squadrito*, 152 F.3d 564, 576 (7th Cir. 1998), where the Court of Appeals for the Seventh Circuit found that the fifty-seven day detention of a person (over his repeated protests) on a civil warrant without an initial appearance violated the complainant's substantive due process under the 14th Amendment. However, Townes' reliance on *Armstrong* in support of this position is misplaced. In *Armstrong*, the plaintiff was arrested pursuant to a civil "body attachment warrant" for failing to appear in court for a hearing regarding child support arrearage. *Id.* at 567. The Seventh Circuit explained that such a writ only granted authority to seize an individual and bring him immediately to the court. Furthermore, the Seventh Circuit noted that when the writ was issued, the trial court had not made any determination regarding Armstrong's culpability for contempt. The *Armstrong* court declared that the situation there was distinct from a circumstance where, like here, "a criminal arrest warrant issues after a threshold showing of probable cause - some proof on the ultimate issue." The court also noted that – in such a case – the probable cause finding "alone justifies detention if a defendant cannot make

9

bail. . . [and that] the criminal arrest warrant conceivably could justify protracted detention if it possessed a sufficient quantity of evidence." *Id.* Here, by signing the arrest warrant for Townes' purported probation violation, the judge in Wayne County made a preliminary finding that he may be criminally culpable. The fact that the judge later changed his mind and determined the charges to be invalid does not negate the initial finding that the arrest warrant was facially valid and supported by probable cause. Even those cases cited by Townes establish that an arrest pursuant to a facially valid warrant is normally a complete defense to a claim for false arrest or false imprisonment under the United States Constitution or 42 U.S.C. § 1983. *See generally, Voyticky v. Village of Timberlake, Ohio,* 412 F.3d 669, 677 (6th Cir. 2005). Although Townes correctly observes that this defense can be rebutted with a showing that a law enforcement officer misled the court or purposefully omitted information which was critical to a finding of probable cause, he has proffered no evidence that such misconduct occurred here. Instead, he merely argues that the information which ostensibly supported the warrant was "obviously inadequate" to constitute a probation violation. This position does not meet the standard of active misconduct as outlined in *Voyticky* and similar precedent. *Id.* at n.4 ("A facially valid warrant is not always sufficient to merit summary judgment . . . when evidence exists that a defendant intentionally mislead or intentionally omitted information . . . ."). *See generally, U.S. v. Louzon,* 392 F. Supp. 1220, 1229 n. 6 (E.D. Mich. 1975) (citing *Beck v. Ohio,* 379 U.S. 89, 91 (1964) ("Whether [the] arrest was constitutionally valid depends in turn upon whether, at the moment the arrest was made], . . . the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense."). Accordingly, the Court concludes that the Townes

10

has not proffered a sufficiency of information upon which to establish that his arrest was made without probable cause.  Therefore, the Defendants are entitled to a judgment on the pleadings as it relates to Townes' false imprisonment claims.

C.

The Defendants posit that Townes' gross negligence claim against Warren Evans should be dismissed because he was not personally involved in the challenged detention. Thus, in their opinions, his minor involvement, if any, was not, and could not have been, the proximate cause of Townes' alleged injuries.  *See* Mich. Comp. Laws. §691.1407(2) (shielding governmental actors from liability if his conduct "does not amount to gross negligence that is the proximate cause of the injury or damage."); Mich. Comp. Laws. §691.1407(7)(a) (noting that "gross negligence" means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results."); *Robinson v. City of Detroit,* 462 Mich. 439, 462 (2000) (defining "the proximate cause" as the one most immediate efficient, direct cause preceding the injury").

To support their claim, the Defendants provide an affidavit from Evans who avers that he had no personal involvement in Townes' arrest, incarceration, requests to be arraigned, attempts to have him arraigned, or the acts which remanded to the Wayne County Jail.

In response, Townes points to (1) the testimony of Jerial Heard, Chief of Jails and Courts, who reported that he had not uncovered any information or data relating to arraignment issues in any of the Sheriff Department's written documents or policies, (2) evidence that Evans, as the then-acting Wayne County Sheriff, was ultimately responsible for establishing jail policies and procedures, and (3) his frequent verbal complaints about the unwarranted detention to a number of Sheriff's Department employees whose names he could not recall.  Together, he believes that this

11

evidence is sufficient to withstand the Defendants' request for the entry of a summary judgment.

The Court finds that on the basis of the current record, the Defendants' request for a summary judgment is not warranted as it relates to Townes' gross negligence claim against Evans. Proximate causation, or the lack thereof, is generally a factual question to be resolved by a jury. *Toth v. Yoder Co.*, 749 F.2d 1190, 1196 (6th Cir. 1984). Unless another event operated  - as a matter of law - as a superseding cause to break the chain of causation, the issue of proximate cause will generally not support the entry of a summary judgment. *Id.* Here, when the evidence is viewed in a light most favorably to Townes, a reasonable jury could arguably find that Evans' failure to develop a policy for promptly scheduling appearances by accused persons at arraignments amounted to conduct which was so reckless as to demonstrate a substantial lack of concern as to whether an injury results.   Mich. Comp. Laws § 691.1407.  Indeed, Chief Heard essentially testified that (1) the Sheriff's Department defers to the practices of the court with regard as to when an accused is arraigned, and (2) the limited role of the personnel within his department is merely to transport the accused to and from a courthouse. Thus, a reasonable jury could reasonably interpret such conduct as representing a substantial lack of concern by Evans as to whether a prisoner is entitled to be promptly arraigned. Therefore, Evans is not entitled to governmental immunity and the Defendants' request for a judgment on Townes' gross negligence claim as a matter of law must be, and is, denied.

### D.

Evans also contends that he is entitled to a judgment as a matter of law on Townes' tort claims because as "the elective or highest appointive executive official" who was acting within the scope of his executive authority, he is immune from liability under Mich. Comp. Laws. §

12

691.1407(5).  Furthermore, Evans proclaims that he cannot be held vicariously liable for the claimed misdeeds of his subordinates.

The determination of whether certain acts are within the scope of an executive official's authority depends upon "the nature of the specific acts alleged, the position held by the official alleged to have performed the acts, the charter, ordinances, or other local law defining the official's authority, and the structure and allocation of powers in the particular level of government." *Swartz Ambulance Service, Inc. v. Genesee County,* 666 F. Supp. 2d 721 (E.D. Mich. 2009).  Even though the Defendants' arguments on this point are terse, there is no evidence and/or persuasive argument on the record to show that, in failing to develop adequate jail policies which would prevent the occurrence of constitutional deprivations, Evans was acting as a private citizen or in some other capacity.  To the contrary, the duty that Townes' claims to have been abdicated by Evans related entirely to his role as the Wayne County Sheriff.  Furthermore, there is no reason to believe that he was acting outside the scope of his executive authority.  Townes' assertion that Evans' failure "to promulgate necessary policies to prevent constitutional violations" was beyond the scope of his authority is argumentative, and merely represents a negative restatement of his primary claim; to wit,  that the Evans' affirmative duty was to "arrest, detain, and produce detainees at court." Inasmuch as Townes has not adequately rebutted the Defendants' claim of immunity, Evans is entitled to a judgment as a matter of law for Counts 1, 2, and 3 of the complaint (i.e. for false imprisonment, gross negligence, and intentional infliction of emotional distress).

### E.

Next, Evans argues that his lack of personal involvement in the events relating to Townes, as described in the complaint, entitles him to the entry of a summary judgment as a matter of law

13

on his claims brought pursuant to 42 U.S.C. § 1983.  To the extent that this argument is based on Evans' affidavit in which he denies having played any specific role in the alleged misconduct, the Court rejects it out of hand.  As noted above, a reasonable jury, upon reviewing the current record, could find that Evans' alleged failure - as the main policy maker for the Sheriff's Department - to establish an arraignment protocol, was the kind of "personal involvement" or omission that triggers liability under 42 U.S.C. § 1983.  *See generally, Diebitz v. Arreola*, 834 F. Supp. 298, 304 (E.D.Wis. 1993) ("To recover damages under 42 U.S.C. § 1983, a plaintiff must establish a defendant's personal responsibility for the claimed deprivation of a constitutional right. However, the personal responsibility requirement is satisfied if the official "acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, . . . .") (internal citations omitted); *See also, City of Canton v. Harris,* 489 U.S. 378 (1989) (distinguishing between a municipality's deliberate or conscious choice not to have a policy, which can be characterized as a municipal policy, and the occasional negligent administration of an otherwise sound policy, which is not actionable).  Here, when faced with a circumstance like pre-hearing detentions – a situation that, on its face, appears to call for procedures, rules, or regulations, the failure to make policy itself may be actionable, especially in light of repeated protests by the detainee and the Sheriff Department's repeated deference to the wisdom of the courts and the guidance of its staff personnel.  *See, e.g. Jones v. City of Chicago,* 787 F.2d 200, 204 (7th Cir. 1986).  Because Evans may be fairly perceived as having this brand of culpability, the Defendants' request for the entry of a summary judgment based on this argument must be, and is, denied.

F.

As the only municipal corporate Defendant in this case, Wayne County argues that it is

14

entitled to a judgment on Townes' claims under 42 U.S.C § 1983 because, in its opinion, he has not presented any evidence that it had an unconstitutional policy which led to a constitutional violation, as required by *Monell v. Department of Social Services,* 436 U.S. 658, 694 (1978).  As each of the Defendants note, a municipality can be liable under § 1983 only where its policies are the "moving force [behind] the constitutional violation."   *City of Canton, supra* at 389.

Townes, by contrast, posits that it is the *absence* of any policy relating to his constitutionally guaranteed right as a detainee to a prompt and timely arraignment that give rise to a *Monell* violation.  Specifically, he argues that similar to the established precedent which requires an arraignment and a determination of probable cause within forty eight hours of a warrantless arrest,  persons like him who are arrested on the basis of a warrant must be arraigned timely, promptly, and without unnecessary delay to comport with the 4th Amendment.  *See generally, County of Riverside v. McLaughlin*, 500 U.S. 44, 56-57 (1991) (requiring probable cause determinations to be made within forty eight hours of warrantless arrests); *People v. Whitehead,* 238 Mich. App. 1, 4 (1999) (same); Mich..Comp..Laws § 764.1b (a person arrested pursuant to a warrant must be presented to a magistrate "without unnecessary delay"); Mich. Ct. R. 6.104(A) ("an arrested person must be taken without unnecessary delay before a court for arraignment in accordance with the provisions of this rule, . . . .").  The parties agree that under *Morrissey v. Brewer*, 408 U.S. 471 (1972) and *Gagnon v. Scarpelli,* 411 U.S. 778 (1973), both parolees and probationers continue to possess important liberty interests that are protected by the United States Constitution and mandate preliminary and final revocation hearings with attendant due process rights.  Under *Morrissey*, a preliminary hearing must occur "at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest while information is

15

fresh and sources are available." 408 U.S. at 485.

Thus, it is Townes' contention that the Defendants are liable for any claims arising out of the absence of any policy which establishes a time frame for arraignments, especially when a particular judicial officer is unavailable. In his judgment, the absence of such a policy reflects a deliberate indifference to the harm that can result from the deprivation of a right to be arraigned in a prompt and efficient manner. Townes also challenges the argument by Wayne County that weekend and holiday arraignments (1) are available only to those persons who are arrested without warrants, or more pointedly, (2) are not available to anyone who is arrested on a bench warrant arising from its Circuit Court. He points to an administrative order by a former Chief Judge of the Wayne County Circuit Court, Mary Beth Kelly, in which she states that arraignments shall be conducted every day of the year, including holidays and weekends, for all felony and statute misdemeanor arrests arising within its jurisdiction.

After reviewing the arguments, the Court does not agree that a summary judgment in favor of Wayne County is appropriate under the circumstances. Here, Townes has presented evidence, through the testimony of Jeriel Heard, that the Sheriff's Department has no official written policy regarding the need for prompt arraignments. Through Heard, Townes has also proffered evidence that (1) the Sheriff Deputies routinely defer to the judiciary for the handling of arraignments once prisoners are presented to the courts, and (2) the lack of a policy here could have contributed to his continued pre-arraignment period of incarceration. The Court finds that when viewing the evidence in a light most favorable to Townes, a reasonable juror could conclude that the Wayne County's lack of a clear policy led to a deprivation of his constitutional rights. Accordingly, the Defendants' attempt to secure a summary judgment on this basis must fail.

16

G.

The Defendants had initially argued that Townes' failure to identify any particular "John Doe" Defendants was fatal to his *Monell* claim. However, by virtue of an agreement between the parties that was accepted by the Court on October 21, 2010, Townes added Jerial Heard and Ali Mazloum as Defendants to this action.  Therefore, the Court determines that the Defendants' argument for a dismissal of the law suit against Wayne County on this ground must be denied for mootness.

H.

The Defendants next argue that Townes has failed to state a claim under 42 U.S.C. § 1983 for the denial of due process under the 14th Amendment.  Noting that *Gagnon, supra,* and *Morrisey, ssupra*, only require that a preliminary and final revocation hearing take place "at or reasonably near the place of the alleged probation violation . . . as promptly as convenient after arrest," the Defendants suggest that the seventeen day delay presented here must fail as a matter of law. However, the movants have not presented any binding authority to support their claims. Furthermore, the Court is not persuaded that such a detention, as claimed by Townes, is presumptively legal.  Inasmuch as Townes has pled enough facts upon which to plausibly entitle him to relief, the Defendants' request for a dismissal on this claim must be, and is, denied.

I.

In extremely summary fashion, the Defendants argue that, inasmuch as Townes' *Morrisey* and *Gagnon* arguments are framed in terms of 14th Amendment due process, his claims under  42 U.S.C. § 1983 which arise out of the 4th Amendment must fail.  However, inasmuch as this conclusory argument is wholly undeveloped by the Defendants' pleadings, the Court declines their

17

invitation to dismiss of this aspect of Townes' lawsuit.

I.

Finally, the Defendants posit that even if there had been an unreasonable delay in arraigning Townes, the Wayne County Sheriff's deputies are entitled to qualified immunity for any claims arising under 42 U.S.C. § 1983. To recover damages under §1983, Townes is required to plead and prove two essential elements; namely, the Defendants (1) deprived him of a right, privilege, or immunity that has been secured by the United States Constitution, a federal statute, or other federal law; and (2) caused the claimed deprivation while acting under color of state law. *Sigley v. City of Parma Heights,* 437 F.3d 527, 533 (6th Cir. 2006). Here, there is no dispute that the Defendants were acting under the color of state law at the time of the incident.

In order to resolve the first question, the Court is encouraged to adopt the following two-step inquiry:

> First, [the court must] consider whether [t]aken in the light most favorable to the party asserting the injury . . . the facts alleged show the officer's conduct violated a constitutional right. If the answer is yes, next [the court should] ask whether the right was clearly established in light of the specific context of the case.

*Binay v. Bettendorf*, 601 F.3d 640, 646-47 (6th Cir. 2010) (quotation marks and internal citations omitted). Althoughthe sequence of this two-step inquiry is often appropriate, it is no longer mandatory. *Id.* (citing *Scott v. Harris*, 550 U.S. 372, 377 (2007) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). When determining whether a right is "clearly established," the Court must look "first to decisions of the Supreme Court, then to decisions of [the Sixth Circuit] and other courts within [the Sixth Circuit], and finally to decisions of other circuits." *Daugherty v. Campbell*, 935 F.2d 780, 784 (6th Cir.1991). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483

18

U.S. 635, 640 (1987).

"Once the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity." *Moldowan v. City of Warren*, 578 F.3d 351, 375 (6th Cir. 2009) (quoting *Silberstein v. City of Dayton*, 440 F.2d 306, 311 (6th Cir. 2006)). "If a plaintiff fails to show either that a constitutional right was violated or that the right was clearly established, [he] will have failed to carry [his] burden." *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009). The burden is high because qualified immunity is intended to protect "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

"Even at the late stage of summary judgment, the qualified immunity analysis remains a question of law for a judge to decide." *Fettes v. Hendershot*, No. 08-4419, 2010 U.S. App. LEXIS 8784, at *9 (6th Cir. Apr. 27, 2010). Thus, "[w]hether there is a genuine issue of material fact is immaterial to a qualified immunity analysis because the court assumes the facts are as the plaintiff alleges." *Id*.

The holdings in *Morrissey* and *Gagnon* outline the existence of a clearly established right for accused probation violators to be processed "as promptly as convenient after arrest." The only remaining question then is whether, when viewed in a light that is most favorable to Townes, the facts alleged show that the officer's conduct violated this right. Accepting Townes' claims as being correct, the record reflects the following entries: (1) Townes was held in custody for a probation violation from June 18th through July 7th - a total of twenty (20) days; (2) although Townes was placed in the Wayne County Jail at 4:00 p.m. on June 20th prior to the closing of the court, he was not arraigned on that day, (3) when the Defendants were informed on June 24th that Judge Callahan

19

would be out of his office until July 7th, they did not make any effort to have Townes arraigned before another judicial officer, (4) despite having taken Townes back to the Circuit Court mistakenly on July 1st and July 2nd , the Defendants made no other attempt to have him arraigned by other lawful means that were reasonably available to them, (5) notwithstanding Townes' repeated oral and written complaints about an inability to secure his fundamental rights under the United States Constitution to be arraigned to officers, nurses, and doctors, the Defendants did not make any effort to have him arraigned by other lawful measures, although such an option was available as evidenced by an Administrative Order of the Wayne County Circuit Court.   A reasonable jury accepting this evidence could conclude that as the entity charged with prisoner detention, the Defendants' failure to have Townes arraigned for twenty days fell short of *Morrissey's* and *Gagnon's* minimum standard for hearings to be held as "promptly as convenient," especially in light of the alleged impact on his work life and physical health.  The Court finds that under the circumstances, the Defendants are not entitled to qualified immunity inasmuch as a reasonable official would have understood that such a prolonged detention – even for an alleged probation violator – ran counter to his clearly established due process rights.

III.

Therefore and for the reasons that have been stated above, the Defendants' motion to dismiss, for the entry of a judgment on the pleadings, and for a summary judgment is denied in part and granted in part.  The request for the dismissal of Counts 1, 2, and 3 against Wayne County and the Defendant, Warren Evans, is granted on the basis of governmental immunity.  Additionally, the false imprisonment claim by Townes is dismissed in its entirety as to all of the Defendants inasmuch as he has failed to show that his arrest was legally invalid.  The remainder of the

20

Defendants' motion is denied since they have not established an entitlement to relief on Townes'

claims under 42 U.S.C. § 1983.


       IT IS SO ORDERED.


Dated:  April 5, 2011                    s/Julian Abele Cook, Jr.        
        Detroit, Michigan               JULIAN ABELE COOK, JR.
                           United States District Judge


<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on April 5, 2011.


                        s/ Kay Doaks      
                        Case Manager